# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:09-CV-166 |
| | ) | |
| CHARLES HOWARD, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on: (1) Defendant Wells Fargo Home Mortgage's Motion for Partial Summary Judgment (DE# 38), filed on July 6, 2011; and (2) Counter-Defendant's Motion for Summary Judgment (DE# 40), filed by Safeco Insurance Company of America, on July 6, 2011.

For the reasons set forth below, Wells Fargo's motion for partial summary judgment is **GRANTED**. Accordingly, this Court finds that SafeCo is liable to Wells Fargo for the remaining mortgage amount due on the Gary, Indiana property as of July 5, 2008. SafeCo's motion for summary judgment is **DENIED**. Count II of Wells Fargo's Counterclaim remains pending.

BACKGROUND

SafeCo filed a complaint seeking declaratory judgment on June 11, 2009. (DE #1). In that complaint, SafeCo argues that it is not liable to pay any insurance proceeds to either Howard, its primary insured, or Wells Fargo, the first mortgagee on the property. Wells Fargo filed its answer and two-count Counterclaim on January 21, 2010, arguing that it was entitled to the insurance proceeds and that SafeCo breached both its contract with Wells Fargo and its duty of good faith. (DE #15).

Wells Fargo filed its motion for summary judgment(DE #38) on July 6, 2011, seeking judgment in its favor on the claims asserted against it in SafeCo's complaint and on its breach of contract counterclaim. On that same day, SafeCo filed its motion for summary judgment. (DE #40). SafeCo seeks summary judgment in its favor on both of Wells Fargo's counterclaims. The Howards have not yet appeared in this case or responded to the complaint.


Facts

On March 29, 2007, Charles Howard ("Howard") entered into a mortgage agreement with Wells Fargo for the purchase of a property located at 1011 E 47th Place in Gary, Indiana. (Robinson Dep., Ex. 3). The original loan amount totaled $52,700. On April 9, 2008, SafeCo entered into an insurance policy agreement extending coverage to the Gary property effective through April 9,

2009.(Cmplt, Ex. A). Wells Fargo was listed as "1st Mortgagee" under the terms of the policy and carried a policy limit of $77,000. (Cmplt, Ex. A). All policy premiums had been paid as of July 5, 2008. (Parker Dep. at 14:17-20; 65:5-8).

Howard failed to make his April 2008 and May 2008 mortgage payments, leading Wells Fargo to hire a company to conduct monthly inspections of the mortgaged, insured property. (Crowder Dep. at 23:18-24:10; 24:22-25:6; 25:21-25:5; 44:25-45:20; 55:8-56:11). Inspections occurred on May 22, 2008 and on June 25, 2008. (Foreman Dep. at 33:12-15; 33:24-34:3; 38:14-16; 41:7-9).

On July 5, 2008, a fire occurred at the insured Gary property (Crowder Declaration ¶6), and on November 7, 2008, Howard submitted to SafeCo a signed proof of loss statement claiming a total loss of the Gary property in the amount of $77,000. (Wells Fargo Ex. I-2). Following receipt of Howard's proof of loss, SafeCo opened an investigation into the July 5, 2008 fire loss which included an examination under oath of Howard. Wells Fargo learned of the fire loss on July 8, 2008 (Crowder Declaration ¶6) and submitted a timely signed, sworn statement of loss. (Wells Fargo Ex. I-2). At that time, the principal mortgage and accrued interest totaled $54,351,57. (Crowder Declaration ¶7). A third property inspection by Wells Fargo's agent was conducted on July 6, 2008 with findings conclusive that the Gary property was vacant and a total loss. (Foreman Dep. at 45:14-17; 49:13-15).

On July 11, 2008, Wells Fargo initiated mortgage foreclosure proceedings against Howard. (Complaint; Robinson Dep. at 63:10-12). On October 22, 2008, a personal judgment was entered against Howard and *in rem* against the Gary property in the amount of $57,632.96. (Exhibit L). The property was never sold. (Robinson Dep. at 65:21-23).

On July 15, 2008, Wells Fargo sent SafeCo an "Urgent Notice of Vacancy." (Exhibit I at ¶8). Wells Fargo hired Superior Home Services ("Superior") to help it secure payment of policy proceeds, and Superior forwarded a copy of the Gary property foreclosure complaint to SafeCo on September 17, 2008. (Ohmer Declaration at ¶4; Exhibit K at ¶ 6). On April 24, 2009, SafeCo requested that Wells Fargo submit a Proof of Loss form which Wells Fargo submitted on May 14, 2009. (Exhibit K at ¶8; Exhibit I at ¶10). Wells Fargo submitted an additional Proof of Loss form on August 10, 2009. (Exhibit K at ¶9-10; Exhibit K-4). SafeCo has not paid Wells Fargo any of the insurance proceeds associated with the Gary property. (Exhibit I at ¶11).

SafeCo filed a complaint for declaratory judgment on June 11, 2009, seeking this Court to declare that it did not owe any insurance policy proceeds to either Howard or Wells Fargo. (DE # 1). Neither Howard nor his wife, who was also named, responded. On January 21, 2010, Wells Fargo filed its counterclaims against SafeCo, arguing that SafeCo was in breach of contract and violated

its duty of good faith by refusing to pay Wells Fargo the insurance proceeds. (DE #15).  SafeCo and Wells Fargo have now filed their respective motions for summary judgment, which will be addressed in turn.


DISCUSSION

I.   Wells Fargo's Motion for Summary Judgment

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the

movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

The substantive law underlying any given claim determines whether a fact is material, and "only disputes over facts that

*might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 248 (1986). "Generally, construction of a written contract is a question of law for which summary judgment is particularly appropriate." *See Merrillville Conservancy District ex rel. Bd. of Directors v. Atlas Excavating, Inc.*, 764 N.E.2d 718, 724 (Ind. Ct. App. 2002).

In its instant motion for summary judgment, Wells Fargo argues that SafeCo is liable for the remaining mortgage on the Gary property. Wells Fargo contends SafeCo breached its insurance policy contract with Wells Fargo when it failed to pay the amount due under the mortgage. Although SafeCo proposes that Wells Fargo failed to meet certain of its own post-loss obligations, Wells Fargo argues that it complied with all contract requirements, thus rendering SafeCo in material breach for non-payment.

## 1. Breach of contract claim

Wells Fargo claims that SafeCo materially breached its contract with Wells Fargo when SafeCo failed to pay insurance policy proceeds to Wells Fargo as first mortgagee on the Gary property. In response, SafeCo argues that Wells Fargo materially breached the same contract terms, thus justifying SafeCo's delay and nonpayment.

An insurance policy constitutes a contract between the insurer and the insured. *See Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1103 (Ind. App. 1980); *South Bend Escan Corp. v. Federal Ins. Co.*, 647 F.Supp. 962, 966 (N.D. Ind. 1986). The insurer's interest is payment of insurance premiums, while the insured's interest is peace of mind that a property is covered by a policy should specifically covered damage or loss occur. However, secondary parties, such as mortgagees, may also hold an interest in the policy proceeds if certain conditions are met. *See SafeCo Ins. Co. Of America v. Howard*, 2010 WL 5058549 *2 (Dec. 6, 2010). "If a mortgagee is listed under a standard or mortgage clause in an insurance contract, then the mortgagee is deemed to have entered into a separate contract with the insurer and is entitled to payment regardless of the mortgagor's acts or omissions." *See id. at *2*; *Fifth Third Bank v. Indiana Insurance Co.,* 771 N.E.2d 1218, 1223 (Ind. Ct. App. 2002). Indeed, "[...] if the mortgagee is listed under a New York, or standard, or union, mortgage clause, it is universally held that the mortgagee has entered into a separate contract with the insurer [...]." *See Property Owners Ins. Co. v. Hack*, 559 N.E.2d 396, 400 (Ind. Ct. App. 1990).

In this case, Howard entered into a contract with SafeCo when he purchased insurance policy OZ4028752, effective beginning on April 9, 2008 and continuing coverage through April 9, 2009. This policy listed Wells Fargo as "1st mortgagee" by virtue of its

status as holder of Howard's mortgage on the Gary property. The policy at issue was in effect on the date of the fire, July 5, 2008 and at that time, it constituted a valid and enforceable contract between the parties. It contained a "Mortgage Clause" which read, in pertinent part:

> **Mortgage Clause.** [...] If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee: (a) notifies us of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware; (b) pays the premium due under this policy on demand if you have neglected to pay the premium; [and] (c) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. [...]

Wells Fargo argues that it complied with all three obligations of the "Mortgage Clause" and that because Howard, the insured, is not eligible to collect the proceeds of the loss, Wells Fargo, as first mortgagee, stands in line to collect the remaining mortgage amount due on the Gary property. Because SafeCo has not paid this amount, Wells Fargo argues that SafeCo is in breach of the insurance policy contract and demands relief.

SafeCo counters that Wells Fargo failed to meet its obligations under the above-captioned "Mortgage Clause" because it: (1) failed to notify SafeCo of a substantial change in risk of which Wells Fargo was aware and (2) failed to submit a signed, sworn statement of loss within 60 days after receiving notice from SafeCo of its failure to do so. The Court will address each of these arguments in turn.

a.  <u>Default on mortgage is not a substantial change in risk</u>

Under the "Mortgage Clause" of the insurance policy at issue, Wells Fargo's first obligation was to notify SafeCo of "any change in ownership, occupancy, or substantial change in risk" of which it was aware.  SafeCo argues that this clause required Wells Fargo to notify SafeCo of the foreclosure proceedings taking place on the Gary property because those proceedings constituted a "substantial change in risk."  Safeco continues by arguing that Wells Fargo breached the terms of the contract, and is thus not entitled to any insurance proceeds, when it failed to notify Safeco of the foreclosure proceedings.

Under Indiana law, there is no clear-cut definition of what constitutes a "substantial change in risk." Indiana law does, however, provide unambiguous language delineating those situations that do not rise to the level of a substantial change in risk. Notably, the institution of foreclosure proceedings does not constitute an increase in hazard substantial enough for an insurer to escape policy liability. *See Phenix Ins. Co. Of Brooklyn, N.Y. v. Union Mut. Life Ins. Co. Of Maine*, 101 Ind. 392, *2-3 (1885). So clear was the Supreme Court of Indiana on this point that it did not even let the case in question survive a motion to dismiss. Rather, while the insurance company in *Phenix* argued that foreclosure proceedings increased the risk of loss by fire so greatly as to allow it to avoid the contract, the court instead

held that if knowledge of foreclosure proceedings were so important to the insurer, it would have explicitly provided so in the policy. 101 Ind. at *2 ("Besides, it may well be supposed that if the appellant had desired to be notified of the commencement of foreclosure proceedings, or had supposed that the mere commencement of such proceedings would increase the hazard of the risk, *it would have stipulated for such notice in direct terms in the mortgage clause.*")(emphasis added). Because it did not so provide, it could not escape its coverage liability.

Although SafeCo directs the Court's attention to several cases that discuss policies explicitly providing for notice of foreclosure proceedings, the policy in the instant case does not contain such a provision. Rather, "substantial change in risk" is undefined, and the Court is thus guided by *Phenix*. In *Phenix*, foreclosure proceedings had already begun, and those proceedings did not constitute an increase in hazard. In this case, the foreclosure process on the Gary property did not even commence until *after* the fire loss. At issue before the loss was the insured's default on his mortgage loan payments. If Indiana law holds that foreclosure proceedings do not rise to the level of a "substantial change in risk" of the property profile, the Court is certainly not persuaded that a mere default on an insured's mortgage, though a serious matter in itself, so increased the risk of fire loss that it could be deemed a "substantial change in

risk." Nor is the Court persuaded that default on a mortgage loan, in the current market, can be deemed an event no reasonable insurer would contemplate at the time of policy issuance.

Had SafeCo desired to be apprised of either mortgage foreclosure proceedings or even the mere commencement thereof-commencement which can still be cured by the defaulting mortgagee-then it could and should have so provided in the insurance policy contract that it drafted and entered into with Howard and Wells Fargo. Because it failed to provide for that contingency, and because contracts are to be construed against the drafting party when it maintains equal or greater bargaining power than its counterparts, SafeCo cannot now escape liability for the mortgage remainder by claiming that Wells Fargo should have put it on notice of foreclosure proceedings.

b. <u>Wells Fargo submitted a signed, sworn statement within 60 days of its obligation to do so</u>

SafeCo next argues that Wells Fargo failed to comply with policy requirements when it failed to attach supporting documentation to its Proof of Loss submissions. Specifically, SafeCo claims that Wells Fargo was obligated to submit a "complete" signed, sworn statement of loss but that Wells Fargo instead submitted to SafeCo a signed statement of loss form "simply" showing the total loss claimed in the property. Under the "Mortgage Clause" of the policy, however, supporting documentation is not

required, and while it can conceivably be requested to facilitate insurer payment, failure to submit it with the signed, sworn statement of loss does not violate policy terms or breach the contract.

The insurance policy agreement is separate, independent contract by and between SafeCo, as insurer, and Wells Fargo, as first mortgagee. *See Fifth Third Bank v. Indiana Insurance Co.*, 771 N.E.2d 1218, 1223 (Ind. Ct. App. 2002). Wells Fargo is not a mere third party beneficiary to the agreement between SafeCo and Howard, the primary insured. Thus, because the parties entered into a valid and enforceable contract separate from the one by and between SafeCo and Howard, the agreement is to be construed using the familiar cannons of contract interpretation.

Insurance contracts are subject to the same rules of construction as other contracts. *See Great Lakes Chemical Corp. v. Int'l Surplus Lines Ins. Co.*, 638 N.E.2d 847, 850 (Ind. Ct. App. 1994). The most basic tenet of contract construction is that where the agreement language is clear and unambiguous, it must be given its plain and ordinary meaning. *See Burkett v. American Family Ins. Group*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000). All language is thus to be given effect, and the Court may not construe an agreement so as to render language or terms meaningless. *See Western Southern Life Ins. Co. v. Acton*, 779 N.E.2d 941, 943 (Ind. Ct. App. 2002) (holding that the Court "must interpret the language

of a contract so as not to render any words, phrases, or terms ineffective or meaningless"').

Two policy provisions are at issue in connection with the required signed, sworn statement of loss. They are markedly different from each other. The first provision is the "Mortgage Clause" applicable to Wells Fargo, which, in relevant part reads as follows:

> **Mortgage Clause.** [...] If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee: [...](c) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. [...]

The second provision is the "You Duties After Loss" Clause applicable to the primary insured, Howard, which, in relevant part reads as follows:

> **Your Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:[...](f) submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief: (1) the time and cause of loss; (2) interest of the insured and all others in the property involved and all encumbrances on the property; (3) other insurance which may cover the loss; (4) changes in title or occupancy of the property during the term of the policy; (5) specifications of any damaged building and detailed estimates of repair; (6) an inventory of damaged personal property described in 4.e; and (7) records supporting the **Loss of Rent** or **Rental Value**.

In this case, SafeCo argues that the signed, sworn statement of loss required by Wells Fargo was subject to the same level of documentary support as the proof of loss required of the primary

insured, Howard. However, this Court disagrees.

Under the policy, in order to collect insurance proceeds following the July 5, 2008 fire, Howard was required to submit to SafeCo a signed, sworn proof of loss within 60 days of the incident in question. This proof of loss was to be supported by documents showing, among others, the time and cause of loss, the interest of the insured and others in the property, other insurance covering the loss, changes in title of occupancy of the property during the policy term, detailed repair estimates, an inventory of damaged personal property, and records supporting the loss of rent or rental value, if applicable. SafeCo argues that the same level of specificity was required of Wells Fargo when it submitted its own statement of loss.

This construction fails for at least two reasons. First, the plain language of the agreement indicates otherwise. While a plethora of supporting documentation was required of the primary insured, the analogous provision describing Wells Fargo's statement of loss requirements did not include the same language. To suggest that the same documents were required of Wells Fargo would be to render entire portions of Howard's required statement of loss provision meaningless. Indeed, had SafeCo intended the same level of specificity from a first mortgagee, it would have so provided in the agreement which it drafted, which leads to the second reason why SafeCo's argument fails.

Any ambiguities in an insurance contract are to be construed against the drafter and in favor of the insured. *See Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002); *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608 (Ind. Ct. App. 2011). "This is especially true where a policy excludes coverage." *See Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1012 (Ind. 2010). Thus, if an ambiguity can be said to exist between what was required of Howard versus what was required of Wells Fargo, the uncertainty must be construed in Wells Fargo's favor. In this case, such a construction leads to the conclusion that SafeCo demanded far less of Wells Fargo's signed, sworn statement than it required of Howard. Certainly, it was the actual property owner who could provide an inventory of property lost of damaged and lengthy repair estimates, not the mortgagee, who dealt at arms-length with the property and was never the homeowner.

With these points in mind, Wells Fargo's Motion for Summary Judgment is **GRANTED**. SafeCo is liable to Wells Fargo for the remaining mortgage amount due on the Gary property as of July 5, 2008.


II.  <u>SafeCo's Motion for Summary Judgment</u>

The legal standard for granting summary judgment is explained above in Part I. The Court reiterates here that it is only proper when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits," if any, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

SafeCo argues that it is not liable to pay Wells Fargo any policy proceeds. First, in rehashing an argument discussed in Wells Fargo's motion for summary judgment, SafeCo contends that Wells Fargo failed to meet its obligations under the insurance policy contract. Second, SafeCo argues that Wells Fargo's damage amount is speculative and based solely on conjecture, which cannot form he basis of a damage award. SafeCo urges that because Wells Fargo could not, during discovery, explain precisely how it arrived at the amount claimed, it is not entitled to policy proceeds at all. Third, SafeCo contends that Wells Fargo's rights under the insurance policy contract were extinguished when Wells Fargo instituted mortgage foreclosure proceedings on the Gary property. In addition, SafeCo seeks summary judgment on Count II of Wells Fargo's counterclaim; breach of the duty of good faith and fair dealing. For the reasons discussed below, each of these arguments fails as a matter of law.

1. <u>Breach of Contract</u>

    a.   <u>Wells Fargo met its obligations under the contract</u>

For the reasons discussed above in Part I-1, Wells Fargo is deemed to have met its obligations under the "Mortgage Clause" of the insurance policy pursuant to which it stands as 1st mortgagee with rights to collect policy proceeds. In this case, Wells Fargo complied with all applicable requirements in order to preserve its claims following the July 5, 2008 fire loss of the Gary property. With this in mind, the Court now turns to SafeCo's remaining arguments.

    b.   <u>Wells Fargo's damages are not speculative</u>

SafeCo contends that the damage amount brought forth by Wells Fargo is speculative. It is well established that damages can be neither speculative nor based on conjecture or guess. *Boyd v. Tornier, Inc.*, 656 F.3d 487, 496 (7th Cir. 2011). SafeCo premises its argument on the fact that during her deposition, Wells Fargo's representative, Tabitha Crowler, could not explain how the bank had arrived at the amount of loss.

Typically, "the rights of the mortgagee to the insurance proceeds are determined at the time of loss." *Fifth Third*, 771 N.E.2d at 1223. Although at her deposition Ms. Crowler could not definitively explain how Wells Fargo calculated its damages, based on the discovery produced, Ms. Crowder has since determined that the principal due on the mortgage and accrued interest as of July

-18-

5, 2008 was $54,340.75.  (Wells Fargo, Ex. C, ¶ 9).  Accordingly, this Court finds Wells Fargo's damages are not speculative.

c.  Wells Fargo's rights were not extinguished by
foreclosure proceedings on the Gary property

SafeCo next argues that even if Wells Fargo met its obligations under the insurance policy contract and presented damages that were neither speculative nor conjecture, it is still barred from recovery because its rights to the proceeds were extinguished by the foreclosure proceedings it instituted post-loss. Specifically, SafeCo contends that foreclosing on the Gary property left Wells Fargo with nothing more than a judgment lien against the property. Notably, SafeCo fails to cite to a single case or secondary source to support its novel position which is in direct conflict with existing case law and thus, the Court rejects it.

"A foreclosure action brought after the loss will not necessarily affect the insurer's liability to the mortgagee." *See Fifth Third Bank v. Indiana Ins. Co.*, 771 N.E.2d 1218, 1223-23 (Ind. Ct. App. 1983). If an insured has already collected through the foreclosure judgment lien against the primary insured or by sheriff's sale of the foreclosed property, the insurer will be released from liability for any amount satisfied in full. So long as only one full recovery of any debt owed results, a mortgagee has

various options in deciding how to satisfy the debt, and any of the available methods can be utilized. *See* RESTATEMENT (THIRD) OF PROPERTY § 4.8.

In this case, by SafeCo's own admission, Wells Fargo has delayed both collection of judgment lien and sheriff's sale proceeds. Indeed, no sheriff's sale has taken place in light of the instant litigation. There has been no satisfaction of any debt owed to Wells Fargo by SafeCo. Consequently, here, Wells Fargo's foreclosure action brought after the July 5, 2008 fire loss of the Gary property does not affect SafeCo's liability to Wells Fargo as first mortgagee. So long as Wells Fargo continues to hold off on collection of judgment lien proceeds or a sheriff's sale of the Gary property, the Court notes that only one full recovery will result in SafeCo's payment of debts owed.

2. <u>Breach of duty of good faith</u>

In its counterclaim, Wells Fargo argues that SafeCo breached its duty of good faith in two ways. First, Wells Fargo contends that SafeCo unfoundedly refused to pay policy proceeds to Wells Fargo as first mortgagee. Second, Wells Fargo claims that SafeCo caused an unfounded delay in making payment, which, to date, has not been made. SafeCo seeks summary judgment on this claim, arguing that Wells Fargo cannot make a bad faith claim because it has presented no evidence to show a "special relationship" between

itself and SafeCo, as required to support the cause of action.

"There is a legal duty implied in all insurance contracts that the insurer deal in good faith with the insured." *See Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (1993). Specifically, "Indiana law has long recognized [this] [...] legal duty [...]" *See id*. Therefore, a duty to conduct business in good faith is implied in the policy agreement governing the relationship between Wells Fargo and SafeCo. "The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; [and] (2) causing an unfounded delay in making payment [...]" *See id*. Further, "the unique character of the insurance contract [...] supports the conclusion that there is a "special relationship" [between the parties]. *See id*. at 519. "That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *See id*. at 520. However, "an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty." *See id*.

In this case, SafeCo delayed payment of policy proceeds to SafeCo and ultimately denied coverage entirely. This Court has found that this has been the product of SafeCo's breach of contract. Yet, material facts exist as to whether SafeCo had any "rational, principled basis for doing so."

CONCLUSION

      For the reasons set forth above, SafeCo's Motion for Summary Judgment (DE #40) is **DENIED**, and Wells Fargo's Motion for Partial Summary Judgment (DE #38) is **GRANTED.**

**DATED:  February 10, 2012**        **/s/RUDY LOZANO, Judge**
                                      **United States District Court**